783 F.2d 401
 John William ROOK, Appellant,
v.
Nathan A. RICE, Warden, Central Prison, Raleigh, North
Carolina, Appellee.
 No. 85-4004.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 9, 1986.
Decided Jan. 31, 1986.
 
 John Charles Boger, New York City (David S. Rudolf, Durham, N.C., on brief), for appellant.
 Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C. (Lacy H. Thornburg, Atty. Gen. of N.C., Barry S. McNeill, Asst. Atty. Gen., Raleigh, N.C., on brief), for appellee.
 Before K.K. HALL and PHILLIPS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 K.K. HALL, Circuit Judge:
 
 
 1
 John William Rook appeals from the district court's denial of his petition for habeas corpus relief, pursuant to 28 U.S.C. Sec. 2254. In his petition, he asserted constitutional infirmities in his convictions for first-degree rape, kidnapping, and first-degree murder and in his capital murder sentence. We affirm.
 
 I.
 
 2
 A detailed account of the facts of this case is set forth in State v. Rook, 304 N.C. 201, 283 S.E.2d 732 (1981), cert. denied, 455 U.S. 1038, 102 S.Ct. 1741, 72 L.Ed.2d 155 (1982). The following is a summary of those facts relevant to this appeal.
 
 
 3
 On May 12, 1980, Ann Marie Roche was walking along a public road in or near the City of Raleigh, North Carolina, when she was abducted by a white man with long, blond hair worn in a ponytail. She was kidnapped and carried away in an automobile to a remote site several miles away, where she was brutally beaten, assaulted, raped, and run over by an automobile as she lay wounded and bleeding to death. The next day, her body was found.
 
 
 4
 Witnesses to the abduction had written down the license plate number of the car into which Roche was forced and had reported that license plate number to the Raleigh police. Upon investigation, the police discovered that the car had, at the time in question, been on loan to John William Rook from his neighbor. The police also determined that Rook matched the witnesses' description of Roche's assailant.
 
 
 5
 At approximately 4:00 p.m. on May 15, 1980, Rook was arrested by Raleigh police on unrelated misdemeanor charges of assault on a minor child and failing to appear in court on a charge of driving under the influence ("DUI"). He was transported to a magistrate's office, where he was read the warrants and informed of his rights. Rook advised the arresting officer, Ronnie Holloway, that he understood his rights and that he would answer questions without a lawyer being present. He was then taken before a magistrate, where bond was set at $1,000 on the charge of failing to appear on the DUI charge and $50,000 on the charge of assault on a minor. Thereafter, Rook was transferred to a jail cell.
 
 
 6
 Later that evening, at approximately 8:00 p.m., Rook was taken from his cell to an interview room. He was provided a copy of his rights and was again read those rights. He advised one of the officers in attendance, Freddie Benson, that he understood his rights and he did not want a lawyer present. He then signed a form in which he waived his rights.
 
 
 7
 After obtaining some identifying information from Rook, Officer Benson proceeded to question him regarding his whereabouts on May 12, 1980. Rook replied that he had been involved in a fight with some black people on that date. Officer Benson then, in a loud voice, told Rook that he was a liar. He read Rook a warrant obtained approximately two hours earlier, which charged Rook with the murder of Ann Marie Roche, and he advised Rook that he was being charged with murder. Subsequently, Officer Benson left the interview room. The two other officers in attendance, Officers J.C. Holder and Ted Lanier, remained.
 
 
 8
 After Officer Benson left the interview room, Officer Holder reintroduced himself to Rook and advised him that he was a Raleigh Police Officer. Holder then went over the rights form and waiver with Rook a second time. Rook advised Officer Holder that he understood his rights and the waiver of his rights. He told Officer Holder that he could read, and that he had had his rights read to him several times before.
 
 
 9
 Rook talked with Officer Holder about his drinking problem, a former girlfriend whom he had beaten up, and about his wife. He also told the officers that while in prison he attended AA meetings and thought that he had his drinking under control, but had started drinking again and needed help for his problems.
 
 
 10
 Holder advised Rook that neither he nor Officer Lanier could help him and that the only thing that could help him was to tell the truth. Holder told the defendant that it took a strong man to admit that he was wrong.
 
 
 11
 Rook then told Officer Holder, "Okay, I did it. I hope you're happy." Holder asked Rook to tell them about what had happened, and Rook proceeded to make detailed inculpatory statements concerning his activities involving the death of Ann Marie Roche.
 
 
 12
 Subsequently, Rook was charged with first-degree rape, kidnapping, and first-degree murder. Counsel was appointed for him, and he pleaded not guilty on all three charges. He was convicted by jury on all counts charged on October 23, 1980. Following the verdict, the trial court convened the sentence determination phase before the same jury, which recommended the death sentence for first-degree murder and consecutive life sentences for kidnapping and rape. Rook appealed to the Supreme Court of North Carolina, which affirmed with Justice Exum concurring in part and dissenting in part. State v. Rook, 304 N.C. 201, 283 S.E.2d 732 (1981). The Supreme Court of the United States denied certiorari. Rook v. North Carolina, 455 U.S. 1038, 102 S.Ct. 1741, 72 L.Ed.2d 155 (1982).
 
 
 13
 On July 26, 1982, Rook filed a motion for appropriate relief, pursuant to N.C.Gen.Stat. Sec. 15A-1411 et seq. (1978), in the Superior Court of Wake County. An amendment to the motion was filed on October 14, 1982. The Superior Court dismissed the motion, with leave to renew. Rook filed a renewed motion for appropriate relief on December 7, 1982. An evidentiary hearing was held on August 29--September 2, 1983, and September 19-22, 1983. The Superior Court denied relief and dismissed the renewed motion.
 
 
 14
 Thereafter, Rook filed a petition for writ of certiorari in the Supreme Court of North Carolina, seeking review of the judgment of the Superior Court. That petition was denied, and the Supreme Court of the United States denied certiorari. Rook v. North Carolina, --- U.S. ----, 105 S.Ct. 608, 83 L.Ed.2d 716 (1984), reh'g denied, --- U.S. ----, 105 S.Ct. 1237, 84 L.Ed.2d 373.
 
 
 15
 On June 4, 1985, Rook filed a petition for a writ of habeas corpus in United States district court. Following respondent's motion to dismiss, the district court entered a memorandum opinion and order dismissing the petition. Rook v. Rice, C/A No. 85-848-HC (E.D.N.C. October 18, 1985). Rook subsequently filed a motion to alter or amend the judgment, and it was denied. The district court issued a certificate of probable cause to appeal, and this appeal followed.[1]
 
 II.
 
 16
 On appeal, Rook asserts a number of contentions. First, he claims that the district court erred in ruling that his confession was voluntary and, thus, properly admitted at trial. Next, he alleges that the district court erred in holding that the trial court's instructions on malice did not unconstitutionally shift the burden of proof to him. Appellant further contends that the district court erred in concluding that the trial court's instructions on mitigating circumstances did not deprive him of a reliable sentencing determination.
 
 
 17
 In addition, Rook maintains that the district court erred in ruling that his death sentence was not excessive. He also asserts that "death-qualification" of the jury deprived him of his rights to a fair and impartial jury. Finally, appellant argues that the district court erred in rejecting his contention that North Carolina's capital statutes are being administered in an arbitrary and racially discriminatory manner. We disagree with each of appellant's contentions.[2]
 
 
 18
 With respect to his first allegation of error, Rook asserts that his confession was involuntary because he was not informed at the time of his arrest that he was a suspect in the Roche murder. He further claims that Officer Holder's statement that the only thing that could help him was to tell the truth served as a powerful inducement to him to confess in light of his desire for help with his alcoholism. Rook also contends that because of his low I.Q. of 71, his poor education (seventh grade), his young age (21), and his history of deprivation and abuse as a child, he was highly susceptible to the pressure put to bear upon him by the interrogating officers. Thus, appellant concludes, the statements he gave to Officer Holder were involuntary and should have been suppressed. We reject this contention as meritless.
 
 
 19
 Following an evidentiary hearing on the issue of voluntariness, the state court determined that no promises, offers of reward, or inducements were made to Rook; that he was not threatened in any way; and, thus, that his confession was made freely, voluntarily and knowingly at a time when he, having a full understanding and appreciation of his constitutional rights, chose to waive them. The district court independently evaluated appellant's confession, and it agreed with the holding of the state court.
 
 
 20
 Our review of the facts of this case leads us to conclude that the district court did not err in finding that Rook's confession was voluntary. See Miller v. Fenton, --- U.S. ----, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). Regardless of the fact that appellant was not aware that he was a suspect in the Roche murder at the time of his arrest, he was informed of the murder warrant against him during his interrogation. At that time, he was also re-advised of his rights. We find nothing in the interrogating officers' conduct that could be considered as bringing undue pressure to bear upon Rook to confess. To the contrary, we find that Rook knowingly, intentionally, and voluntarily consented to the questioning which elicited his confession.
 
 III.
 
 21
 Appellant's next contention is that the trial court's instructions on malice unconstitutionally shifted the burden of proof to him. The jury instruction to which Rook objects was that given by the trial judge on the crime of first-degree murder, pursuant to N.C.Gen.Stat. Sec. 14-17. The judge instructed the jury, inter alia, as follows:
 
 
 22
 Now, if the State proves to you beyond a reasonable doubt that the defendant intentionally killed Ann Marie Roche with a deadly weapon, or that he intentionally inflicted a wound upon her with a deadly weapon that proximately caused her death, then the law implies, first, that the killing was unlawful, and secondly, that it was done with malice.
 
 
 23
 (Emphasis added). Appellant claims that the emphasized portion of the above-quoted instruction impermissibly shifted the burden of proof to him. We disagree and conclude that it merely shifted the burden of production. With respect to an almost identical instruction in Davis v. Allsbrooks, 778 F.2d 168, (4th Cir.1985), we held that "a state may legitimately shift a burden of production on an element of the crime to the defendant ... so long as the presumed fact is rationally connected to a proven fact." Id. at 172.
 
 
 24
 In this case, intent was at issue at trial. Appellant maintained that he accidentally drove the automobile over Ann Marie Roche. The question of whether the killing was intentional was submitted to the jury with clear instructions that the burden of proof was upon the state.[3] In rendering its verdict of first-degree murder, the jury found that the act was intentional and not accidental. Rook did not contend nor did he produce any evidence that he acted in self-defense or in the heat of passion. Thus, the jury's finding that the act was intentional necessarily included a finding that the act was malicious. Accordingly, in light of our holding in Davis, we reject Rook's contention.
 
 IV.
 
 25
 Rook further claims that the trial court's instructions with respect to mitigating circumstances deprived him of a reliable sentencing determination. During the sentencing phase of Rook's trial, the jury was instructed to determine the following: (1) whether there were aggravating circumstances; (2) whether the aggravating circumstances were sufficient to warrant a death sentence; (3) whether there were mitigating circumstances; and (4) whether the aggravating circumstances outweighed the mitigating ones.
 
 
 26
 Appellant maintains that because of the order of the questions and the fact that the last sentencing question posed to the jury was merely whether aggravating circumstances outweighed mitigating circumstances, the jury was never asked to decide whether death was the appropriate penalty for him. He notes that subsequent to his conviction, the Supreme Court of North Carolina suggested that jury instructions in capital cases follow a form which specifically asks the jury:
 
 
 27
 Do you find beyond a reasonable doubt that the aggravating circumstance or circumstances found by you is, or are, sufficiently substantial to call for the imposition of the death penalty when considered with the mitigating circumstance or circumstances found by you?
 
 
 28
 State v. McDougall, 308 N.C. 1, 301 S.E.2d 308, 327 (1983) (emphasis added). Rook further asserts that his case was one of the very few pre-McDougall North Carolina death cases in which the jury was not required to indicate separately in writing whether or not each mitigating circumstance had been found. According to appellant, his case was one which involved substantial mitigating circumstances (e.g., low I.Q., deprivation and abuse as a child, young age, etc.). He contends that if the jury had been asked to decide whether the aggravating circumstances "when considered with the mitigating circumstance[s], " call for a death sentence, their task would have been much different, and far harder.
 
 
 29
 The district court rejected all of Rook's claims. It noted that the contention that the jury should have been required to list the mitigating circumstances was fully explored by the Supreme Court of North Carolina in its direct review of petitioner's conviction. State v. Rook, supra. It further pointed out that it was that contention that evoked the dissent of Justice Exum. Nevertheless, the district court adopted the reasoning of the majority of the Supreme Court of North Carolina and found that the procedure used by the trial judge was not constitutionally deficient. The district court determined that under the instructions given by the trial judge to the jury, the jury did consider all mitigating circumstances and weighed those circumstances in deciding that the death penalty was the appropriate punishment. We agree that the procedure employed satisfied all requirements to which Rook was constitutionally entitled.
 
 
 30
 At the outset, we find nothing in the Supreme Court of North Carolina's decision in McDougall which constitutionally mandates a particular order or form for the sentencing instructions in Rook's case. In McDougall, the court was attempting to establish uniformity in sentencing based on North Carolina's applicable statute. It was not setting forth a federal constitutional standard.
 
 
 31
 The procedure involved in imposing the death penalty need not be structured to favor a defendant but need only avoid creating a fundamentally unfair trial. See Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983). The best of all procedural worlds is not guaranteed by the United States Constitution. McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971). In Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), the Supreme Court emphasized that in designing a constitutional capital punishment system, all that the state is required to provide is a meaningful basis for distinguishing between those trials resulting in a penalty of death and those in which a penalty of life imprisonment is imposed. Under Zant, this is accomplished by simply identifying aggravating circumstances and requiring that one or more of them be found. "What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime." Zant, 103 S.Ct. at 2743-44. We find that in the instant case, neither the order of the instructions nor the language of the instructions prevented the jury from making an individualized determination as to whether Rook should receive a capital sentence.
 
 
 32
 In addition, we conclude that the failure of the trial court to require the jury to list mitigating circumstances does not rise to the level of a constitutional violation. All that is required is that the capital sentencing procedure provide a reliable means of determining whether an individual defendant should receive a death sentence. As noted previously, the procedure employed in this case did just that.
 
 V.
 
 33
 Appellant also contends that the death sentence, as applied to him, was excessive and disproportionate. He bases this contention primarily on his problems with drugs and alcohol, his troubled youth, and the failure of the State of North Carolina to provide him adequate help. We conclude that the district court did not err in ruling that Rook's death sentence was not excessive.
 
 
 34
 As noted by the district court, appellant's troubled and neglected youth as well as his alcohol and drug abuse problems were presented to the psychiatrist who made the determination of Rook's mental competence, the sentencing jury, the Supreme Court of North Carolina on direct review, and the state judge on the motion for appropriate relief. The examining psychiatrist found Rook to be responsible for his acts and competent to stand trial. Moreover, the sentencing jury, even when considering all of the mitigating circumstances, found that they were outweighed by sufficiently substantial aggravating circumstances to warrant the imposition of the death penalty. In light of the horrendous nature of the crimes perpetrated upon Ann Marie Roche by appellant, we too find that the death sentence was not excessive in this case.
 
 VI.
 
 35
 Pointing to the fact that seven jurors were successfully challenged by the state for cause because of their opposition to the death penalty, Rook next argues that this "death-qualification" of the jury deprived him of his right to a fair and impartial jury. We rejected the same contention in Keeten v. Garrison, 742 F.2d 129 (4th Cir.1984), petition for cert. filed, S.Ct. No. 84-6187 (October Term 1985). Therefore, appellant's claim must fail.
 
 VII.
 
 36
 Appellant's final argument is that North Carolina's capital statutes are being administered in an arbitrary and racially discriminatory manner. He asserts that defendants who have murdered whites are more likely to receive death sentences than are defendants who have murdered blacks.
 
 
 37
 The state court which considered Rook's motion for appropriate relief reviewed this contention and rejected it. The state court reasoned:
 
 
 38
 The defendant has failed to prove, by a preponderance of the evidence, that the death penalty in North Carolina is administered pursuant to a pattern of discrimination based upon race.... The court specifically concludes that the testimony and study by Dr. Samuel Gross [petitioner's expert] is based upon insufficiently accurate data to establish a pattern of discrimination in the application of the death penalty based upon the race of the victim.
 
 
 39
 The state court further concluded that there is no evidence that the death sentence in Rook's case is the product of intentional discrimination.
 
 
 40
 We have reviewed the evidence and agree with the state court's conclusions. Consequently, we reject appellant's contention as meritless.
 
 VIII.
 
 41
 On the basis of the foregoing, the judgment of the district court is affirmed.
 
 
 42
 AFFIRMED.
 
 
 43
 JAMES DICKSON PHILLIPS, Circuit Judge, concurring in part and dissenting in part:
 
 
 44
 I concur in the majority's conclusion that there was no constitutional error invalidating Rook's state court conviction and in all portions of the majority opinion explaining that conclusion save that which in Part III deals with the burden-shifting instruction issue. As to that, I concur in the result, but I write specially to indicate the basis of my concurrence.
 
 
 45
 I dissent from that portion of the opinion that finds no constitutional error in the procedure by which the death sentence was imposed. Because I think there was constitutional error in that phase of the trial, I would direct the writ to issue conditioned upon the state's provision of a new sentencing proceeding.
 
 
 46
 * I agree that under the procedural circumstances of this case, the jury instruction incorporating the presumption of unlawfulness and malice did not unconstitutionally shift the burden of persuasion to Rook. I also agree that the reason it did not is the same reason that ultimately saved the comparable instruction recently considered in Davis v. Allsbrooks, 778 F.2d 168, (4th Cir.1985).
 
 
 47
 But the majority opinion fails to deal with the specific challenge made to the instruction here, and because the challenges are different--though equally unavailing--I do not want to be understood as considering them identical and identically controlled by the Davis v. Allsbrooks rationale. In another case, the specific challenge made here might not be at all controlled by Davis v. Allsbrooks, and I think it important to recognize that in order to keep the lines of precedent clear. This will almost assuredly not be the last time the courts of this circuit are called upon to consider, in a variety of evidentiary settings, challenges to North Carolina's presumption of malice and unlawfulness as embodied in jury instructions comparable or identical to that given here.
 
 
 48
 The specific challenge made here in fact recognizes Davis v. Allsbrooks' authority, but attempts to distinguish it on the basis that here--though not in Davis--malice was in issue. This is said to be so because here Rook's primary factual defense to the murder charge was that death was caused by the automobile's running over the victim, and that Rook did not intend to run over her, that this was accidental. There being some evidentiary support for this, the argument goes, malice was necessarily in issue, because malice presupposes intent. This being so, the challenged jury instruction embodied a mandatory presumption favoring the prosecution in respect of a disputed element of the crime charged. Hence it necessarily violated the constitutional right recognized in such cases as Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); and most recently in Francis v. Franklin, --- U.S. ----, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), because the jury may reasonably have understood the instruction as shifting the burden of persuasion on the disputed malice issue to Rook.
 
 
 49
 This argument is flawed, and in the end Davis v. Allsbrooks does control to defeat it. Here, as in Davis, the defendant had failed to carry the burden that Davis held was constitutionally imposed by North Carolina merely to produce "some" evidence of "heat of passion" or "self-defense" in order to hold malice fully in issue in the face of proof beyond a reasonable doubt that the killing was done intentionally and with a deadly weapon. See Davis, 778 F.2d at 182, 183 (Phillips, J., concurring). Here, obviously, there was no such evidence; the production burden was not carried, and the presumption had only the effect of confirming that because the burden had not been carried, "malice" was presumed if the jury first found beyond a reasonable doubt that the killing had been done intentionally with a deadly weapon.
 
 
 50
 Intent, both as a discrete element of the crime of murder, and as a predicate for the presumption of malice, was obviously fully in issue because of Rook's "accident" defense. The challenged jury instruction did not embody any presumption of intent, cf. Francis v. Franklin, --- U.S. ----, 105 S.Ct. 1965. Indeed, it clearly placed the burden of persuasion of intent upon the state, and indicated the relevance of the "accident" defense to its consideration. And the jury was expressly told that malice was presumed only if intent (and deadly weapon use) were first found beyond a reasonable doubt.
 
 
 51
 Because the elements of malice and unlawfulness had constitutionally been taken out of issue by Rook's failure to carry the requisite production burden, the challenged jury instruction embodying a presumption as to those issues was not unconstitutional on the authority of Davis v. Allsbrooks.
 
 II
 
 52
 Dissenting alone on Rook's direct appeal of his conviction to the Supreme Court of North Carolina, Justice Exum of that court voted to remand for re-sentencing because of the trial court's failure to require the sentencing jury separately to indicate its findings on each mitigating circumstance submitted for its consideration. Though he based this essentially upon prejudicial error in failing to follow the state statute, Justice Exum indicated a belief that the procedure used might also amount to constitutional error because of its failure under the particular circumstances to accord the degree of "individualized consideration" held to be constitutionally mandated in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). The majority of the Supreme Court of North Carolina, the district court in this habeas proceeding, and the panel majority here have of course rejected this view, but I am persuaded by it, and adopt it as articulated in detail by Justice Exum. State v. Rook, 304 N.C. 201, 283 S.E.2d 732, 754-61 (N.C.1981).
 
 
 53
 I add only that central to Justice Exum's analysis is the necessary recognition that requiring the sentencing jury to give independent attention to each mitigating circumstance cannot be considered a constitutional imperative under every state's procedures. The Supreme Court's upholding of a variety of state procedures which do not have that feature makes that obvious. See Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). But Justice Exum's analysis convincingly demonstrates to me that because each state's sentencing procedures will inevitably develop its own set of dynamics in providing more or less "individualized consideration," each must therefore be assessed independently on that score. See State v. Rook, 283 S.E.2d at 757-58 (Exum, J., dissenting).
 
 
 54
 Taking this approach, and supporting his analysis of the peculiar dynamics of North Carolina's procedure with actual case studies, Justice Exum's analysis persuades me that not requiring independent consideration and response as to mitigating factors while requiring it as to aggravating factors under the North Carolina procedure, significantly undercuts the possibility of the degree of individualized consideration contemplated by the Lockett Court as constitutionally required. For that reason, I believe that Rook's eighth and fourteenth amendment rights were violated by the procedure used in his sentencing proceeding. I would therefore issue the writ conditioned upon the state's providing a new sentencing proceeding free of the constitutional infirmity within a reasonable time.
 
 
 
 [1]
 February 14, 1986, has been set as the date for Rook's execution. The district court denied his application for a stay on December 3, 1985. By order dated December 6, 1985, this Court also denied Rook's application for a stay of execution
 
 
 [2]
 The government submits that several of Rook's contentions are procedurally barred under Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), because they were not raised on direct appeal in accordance with state law and may not be excused on grounds of cause or prejudice. Even if the government is correct, we conclude that on their merits appellant's contentions must fail
 
 
 [3]
 The trial judge instructed the jury that:
 The State must satisfy you from the evidence beyond a reasonable doubt that the victim's death was not accidental before you may return a verdict of guilty of first degree murder on the grounds of malice, premeditation and deliberation.
 The burden of proving malice is not upon the defendant. The burden remains on the State to prove that the defendant acted intentionally with malice, with premeditation and deliberation.
 If the State has failed to do so, then you cannot find the defendant guilty of first degree murder on the basis of malice, premeditation and deliberation.