**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 96-4360

ROBERTO RAMIREZ-MARTINEZ,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CR-96-37)

Submitted: March 31, 1997

Decided: April 25, 1997

Before WIDENER, HAMILTON, and LUTTIG,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Dale W. Dover, Alexandria, Virginia, for Appellant. Helen F. Fahey,
United States Attorney, Brian P. Lennon, Special Assistant United
States Attorney, Markus H. Meier, Special Assistant United States
Attorney, Alexandria, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

After his conviction and five month sentence imposed for unlawful possession and use of fraudulent immigration documents, in violation
of 18 U.S.C. § 1546(a) (1994), Roberto Ramirez-Martinez (Martinez) appeals from the district court's order denying his motion to suppress
tangible evidence and statements. We affirm.

During the execution of a state search warrant at a residence suspected of operating as a house of prostitution, Martinez, an illegal
alien, was arrested and charged with unlawful possession and use of a fraudulent Alien Registration Receipt Card ("green card") and a fraudulent Social Security Card. Prior to trial, Martinez moved to suppress the admission of the fraudulent documents and all statements made by him to special agents of the Immigration and Naturalization Service ("INS"), who accompanied the Prince William County police in executing the search warrant.

The district court held that the Prince William County police had a valid state search warrant, but that the involvement of the INS agents improperly converted the search warrant to a federal warrant.
Therefore, the search was improper. However, under the "inevitable discovery" doctrine, a court may admit illegally obtained evidence if
the prosecution can show by a preponderance of the evidence that the
item sought to be suppressed "ultimately or inevitably <u>would</u> have been discovered by lawful means." <u>See Nix v. Williams</u>, 467 U.S. 431,
444 (1984).

The search warrant in this case included a search for documents identifying persons found in the residence, employees, and customers.
The district court properly noted that because Martinez was arrested
and later convicted for residing in a bawdy place, his identity would
have been questioned. Thus, the fraudulent documents relating to

2

Martinez's identity inevitably would have been discovered and seized
at the latest, in the process of establishing his identity upon his arrest.
We find no clear error in this conclusion. See United States v. Bernard, 757 F.2d 1439, 1443 (4th Cir. 1985).

During the interrogation, Martinez informed INS Agent Campbell that he worked in construction. Campbell then inquired of Martinez the location of his false documents. Martinez responded that they were in his wallet in his room. He then led the INS agents to his room, told them his wallet was in a shoe box on the table, and the agents recovered his wallet. Campbell searched the wallet and found a counterfeit Social Security card and green card.

Martinez challenges the district court's conclusion that the statements he made to the INS agents were voluntary. Whether a statement is voluntary is to be determined from the totality of the circumstances.
See Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). This Court reviews the district court's factual determinations for clear error. See
Beckwith v. United States, 425 U.S. 341, 348 (1976). But the determi-
nation regarding the voluntariness of a defendant's statement is reviewed de novo. See Arizona v. Fulminante, 499 U.S. 279 (1991).

The relevant determination regarding voluntariness is whether the government agents have overborne the defendant's will or left his "capacity for self-determination critically impaired." Schneckloth, 412
U.S. at 225; United States v. Pelton, 835 F.2d 1067, 1071-72 (4th Cir.
1987). When a defendant has been properly advised of his Miranda*
rights, a subsequent statement is more likely to be voluntary. See
Rook v. Rice, 783 F.2d 401, 405 (4th Cir. 1986).

The circumstances under which Martinez made the incriminating statements are as follows: Shortly before midnight on the evening of
October 27, 1995, members of the Prince William County Police Department and INS agents knocked and announced their presence, and then forcibly entered a home through the back basement door. The officials were armed and some wore body armor. Martinez and his wife were in the living room on the ground floor and heard the

_____

*See Miranda v. Arizona, 384 U.S. 436 (1966).

3

screams and noise from the basement when the officials entered. He initially thought there were about to be assaulted or robbed.

Some of the officials came upstairs and, in English and Spanish, ordered Martinez and his wife to remain seated and to be calm. The officials placed Martinez and his wife in handcuffs with their hands behind their backs. Within fifteen minutes of entering the house, INS Agent Campbell read Martinez his <u>Miranda</u> rights in Spanish and then questioned Martinez about his immigration status. Martinez testified that while Campbell was questioning him, the officials brought a young man from the basement into the room with Martinez and Campbell. According to Martinez, this young man had run into the bathroom, the officials followed him, arrested him, and hit him. The man was screaming in pain and Martinez testified,"[w]hen he came over to where we were, he was bleeding from the face."

Martinez now contends that "[g]iven the hour, the forcible entry, the illegal search, the number of men who accosted the couple, the show of weapons, and the sight of another resident who apparently had been beaten bloody for resisting, the suppression court should have ruled . . . that the defendant's statements were involuntary." However, the district court also heard testimony that Martinez waived his <u>Miranda</u> rights. Martinez was questioned at home with his wife present. No threats or threatening gestures were made to Martinez, the government agents did not touch Martinez except when they hand-cuffed him, the officials' weapons were not drawn during question-ing, and the agents made no promises to Martinez. Also, Martinez remained calm during the interrogation and did not appear to be shaken by the sight of the young man who was bleeding from the side of his face.

We find that the district court did not clearly err in determining that the totality of the circumstances suggest that the statements were vol-untary. <u>See Beckwith</u>, 425 U.S. at 348; <u>Schneckloth</u>, 412 U.S. at 226. The officials did not coerce Martinez into revealing the location of his fraudulent documents. They issued the <u>Miranda</u> warnings, and, after Martinez waived his rights, they questioned him and he provided the documents. <u>See Rook</u>, 783 F.2d at 405 (statement more likely volun-tary when defendant properly advised of <u>Miranda</u> rights). Other than the force or show of force used to secure the residence, there is no

evidence that the officials used force or coerced a statement from Martinez. Rather, Martinez and Campbell had a calm discussion, which resulted in Martinez admitting that he had false immigration documents. We agree with the district court that the statements were
voluntary and admissible.

Martinez also challenges the suppression court's decision to excuse the state magistrate subpoenaed by Martinez to testify as to any indi-
cation of a pretextual search and arrest. He contends that this ruling
deprived him of his Sixth Amendment right to call witnesses on his behalf. The decision to excuse the state magistrate from testifying at
the suppression hearing is reviewed for abuse of discretion. This Court should afford deference to the district court's conclusions on
the relevancy and admissibility of evidence. See United States v. Whittington, 26 F.3d 456, 465 (4th Cir. 1994).

In Franks v. Delaware, 438 U.S. 154 (1978), the Supreme Court held that a criminal defendant is entitled to a hearing where there is
an offer of proof that the affidavit supporting the search warrant con-
tains material falsehoods which misled the magistrate. Martinez sug-
gests that the court improperly precluded his offer of proof by excusing the magistrate. However, as the government properly notes in its brief, Martinez did not raise a Franks issue in his motion to sup-
press and did not challenge the sufficiency of the state search warrant.
Therefore, the district court properly refused to look beyond the con-
tent of the affidavit and correctly deemed the magistrate's testimony
irrelevant.

Martinez also asserts that the magistrate would testify concerning whether the state search warrant was a pretext to bring in federal authorities. However, as the district court noted, there was no show-
ing or evidence of a pretextual search warranting further consider-
ation. The search was a valid state search, and the affidavit contained
"tons of probable cause" to search for state law violations. Also, as
a result of the search, six people were arrested and later pled guilty
to state charges, including prostitution, residing in a bawdy place,

residing in or frequenting a bawdy place, and possession of mari-
juana. We conclude that the district court appropriately found that
the
affidavit contained probable cause to search on suspicion of
violations

5

of state law, and therefore, the affidavit was properly reviewed based
only on the four corners of the document.

In requesting a <u>Franks</u> hearing, Martinez showed the district court judge two affidavits--one was signed and attached to the search warrant, the other was not signed and the government asserted that it was a prior draft of the affidavit. However, these affidavits failed to make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by affiant in the warrant affidavit." <u>Franks</u>, 438 U.S. at 155-56. Also, Martinez failed to show that the differences in the affidavits were essential to the magistrate's determination of probable cause. <u>Id.</u>; <u>see United States v. Jeffus</u>, 22 F.3d 554, 558 (4th Cir. 1994) (defendant has heavy burden of showing need for <u>Franks</u> hearing). Considering that the only real difference between the affidavits was that the sworn one stated that none of the five cooperating citizens had arrest records, while the unsigned one stated that three of the five did not, the district court properly refused to consider the unsigned affidavit, noting that the signed copy was the official document, and the unsigned affidavit was not relevant. Therefore, the district court did not abuse its discretion in dismissing the state magistrate as a witness. <u>See Whittington</u>, 26 F.3d at 465.

In conclusion, we affirm the district court order denying Martinez's motion to suppress. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

6